Yes, thank you, Your Honor. Good morning. Charles Brower, appearing for the Plaintiff Appellant, Isabella Nunes-Baptista. Your Honor, we are here because our appeal is based upon our position that the judge was wrong when she granted the summary judgment, because there are genuine issues of material fact in this case, which need to be determined by the jury, and also that the defendant was not entitled to judgment as a matter of law. I would like to start out with the judge's order granting the summary judgment, filed April 30, 2012, page 15. In the last paragraph, or starting in the last paragraph, the judge essentially summarized her position. She indicated, while the court is disconcerted by the fact the plaintiff was terminated for an incident which occurred just one day after giving her supervisor a medical certificate and making a third request for an accommodation because of her pregnancy, it is not disputed that plaintiff's prior requests for accommodation for her restrictions as to standing and the number of hours that she could work were approved by her supervisor during her pregnancy and that she did not pay for food that she took out of the employer's store. Thus, plaintiff cannot establish a prima facie case of disability discrimination for failure to accommodate. Well, first of all, with regard to the judge's finding that the plaintiff took food outside of the employer's store, clearly is erroneous because the employee did not take food out of the store. Well, it's kind of a loose statement, but I think the statement the court was making was she took the food from the employer's store. I mean, the food belonged to the employer, not to the employee. I mean, this is a harsh result. There is no question about it. But I don't think the fact that there was a loose statement by the court is enough for you to prevail in this case. Well, that's just one of my points, but she does say she took the food out of the store, which clearly would make a big difference because the defendant's position is she stole the food. So if she took the food out of the store, clearly that would be more of a theft situation. There's more than one way to interpret that language is what I'm trying to say. It's kind of a vernacular to say she took it out of the store. In some places, it would mean she took it from the possession of the store. I don't understand the difference it makes. As I understand the record, she took it and she ate it for lunch, right? She did, but they presented it. What's the difference between eating it for lunch inside the store and eating it for lunch outside the store? Well, actually, it was breakfast, Your Honor. Well, whatever. Does that make a difference? It does make a difference. Yes, it does make a difference because when she came to work, she started work. She grabbed some food to have some breakfast. She was involved in doing her work. If you're on your lunch hour, I mean, their own policies say that the employee not only has to pay for the food, but they have to stand in line. They cannot get in front of a customer. So it does make a difference, yes, if it's breakfast or lunch. Because at breakfast, she gets to work. She starts work. She grabs $3 worth of food, and she's doing her work, going to the front, back, placing orders. She inadvertently forgets to pay for the food. So to me, it does make a difference. Does the policy make any allowances for inadvertence, though? Well, Your Honor, I would like to get to that subject. Okay. First of all, I think this case should be remanded because they have failed to provide the court with a copy of the Hawaii policy. They put in the Northeast policy, a couple of pages of that, and they put in a policy that's page 46 of the excerpts, which is the South Pacific policy. But they don't attach anything else from the South Pacific policy. Now, did you point out to the district court that the failure to provide the entire policy raised the material issue of fact? I did argue, Judge, that we should not be bound by the Northeast policy. Because although she had signed that when she started in New York City, clearly that policy is different from the Hawaii policy. Because the one page they provided on page 46 of the excerpts from the Hawaii policy does not talk about automatic termination or being terminated if you don't have a receipt. Again, it seems to me you're quibbling about something that's not very important. The question is, from the employer's point of view, she was fired because, you know, she stole food. She took food, and she consumed it. She didn't pay for it. Now, further from the employer's point of view, it becomes, you know, under any generic, I'll call it theft policy, because according to their side, right, you know, there were charges that just happened more than once, several times. So it's a repeated offense. So from that, the employer could infer, well, you know, it was not a mistake. She was in a hurry. She wanted to get to work. She had to eat it up right away, so she forgot to pay for it. But, you know, it happened over and over. And that's their side. So it doesn't matter whether, you know, it's in a written Hawaii policy or not, does it? I mean, if somebody steals something, I mean, that's a proper ground for terminating somebody. Now, so the question is, you know, is that what happened? It wasn't. No, I'm saying the question is not whether it's in a written Hawaii policy or not. That doesn't make any difference at all. Are you saying an employer can't fire an employee for theft if it's not in a written policy? They can, but they came to the judge. Why quibble about that? I'm sorry? I'm not quibbling. Why quibble? Well, you said, well, it's only in the Northeast policy. There's no written policy in Hawaii. What difference does it make? Yeah, because they came to the court and said, Judge, here's our policy, Northeast, terminated, no receipt. That's not in the Hawaii policy. Well, let's go to the core proposition. Do you disagree with the proposition that an employer could have a zero-tolerance policy, leading to termination for taking goods without paying for them? They could, but they have to prove it. Why do they have to prove it? If they have that policy, if they assert they have that policy, why don't you have to disprove it to show, in fact, that this is inconsistent behavior? Well, I can disprove it. Well, where are the evidence before the district court? Is there any evidence? Page 46 of the excerpts, which is before the district court, does not talk about automatic termination. Stop, because you're, again, trying to quibble with the announcement of the policy. And my question is, is there anything that prevents an employer from imposing that doctrine, imposing that rule in a particular case? If you could establish that other employees were not terminated for similar behavior, then you can make out the case for saying that your client was picked upon for another reason, i.e., the pregnancy. But if you can't show that somebody else hasn't been treated differently, I'm not sure what you've got to go on, because I don't think it's really disputable that an employer could have a zero policy, a zero-tolerance policy, could terminate an employee for taking product without paying for it. Is there anything that would prevent the employer from doing that? No, as long as it's not a pretext. Anything that would prevent them from doing it, even if they hadn't announced to the world in advance that that was their policy? No, as long as it's not a pretext. So the absence of a printed policy really doesn't matter, does it? It's whether it's a pretext. Can you show it's a pretext by pointing us to anybody who was not terminated for having behaved in a similar fashion? No, but our position is we don't have to go with McDonnell Douglas because we have direct evidence. I don't say you have to go with McDonnell Douglas, but you've got to prove that the reason given wasn't the real reason. If the reason given was a legitimate one, and I think we've just established that it was, then what evidence was there that the reason given wasn't the real reason? Well, because of circumstantial evidence or direct evidence of what Mr. Kwan, you said you're not doing McDonnell Douglas because you have direct evidence. So what is the direct evidence in the record that shows there was discrimination? Well, I argued to the district court judge that the direct evidence is the first utterance of Mr. Stockton when he was presented with the third restriction. And he said, we can't provide this for you. You can't be sitting down. We don't have enough work for you. We can't have you watching Facebook. It doesn't look good to the customers. That's our direct evidence. That was his first reaction. So if we disagree with you that that's direct evidence of discrimination, do you lose? It's either direct or circumstantial evidence. I don't have to go with McDonnell Douglas. We definitely have evidence here that is in dispute as to what Mr. Stockton said. The court, as we indicated, the court accepted his position that all he said was we need to comply with your restrictions. And that's just not true. My client testified in her deposition and also in a declaration that, in fact, he said we cannot. So your argument is that because the employer did not want to comply with the restrictions necessitated by her pregnancy, they fired her? Yes. That's exactly my position. My position is, yes, the judge pointed out that they had followed restrictions the first two. But the first one was a 15-pound lifting restriction. Okay. That's fine. The second one was a 20-pound restriction, eight hours a day. That's fine. The third one, now here's the problem, okay, only six hours a day working, and you've got to take a 30-minute break every two hours. That's when he said, hey, you know what, this is too much. We can't do this. And our position is, yes, that's why he fired her. That's why he asked for that receipt the next day. They had never done it before, she testified. They had never asked anybody before. So it's not direct evidence if, in fact, she was fired for that reason, and that's not the reason given. So it's not direct evidence. It is arguably circumstantial evidence, but that just gets us back to the usual summary judgment pattern. I mean, the McDonnell-Douglas framework is simply a framework for analysis. In the end, it's a summary judgment case either way. So the question becomes, have you presented enough evidence so that a reasonable jury could conclude that the reason given by the employer wasn't the real reason, that the real reason was what you're arguing, it was because of her pregnancy? The answer to that is yes. If you let me get to the jury, I think I can convince them that, in fact, the reason she was fired, because they didn't want to comply with our restrictions, and this asking for the receipt was a complete pretext. Because even also— But, see, so you've just gotten to the word pretext, reflecting that that's not simply a requirement of McDonnell-Douglas. That's what analysis calls for here. And my concern with your case, and I think what drove the district court's decision, is I don't see anything that suggests that the employer didn't honestly apply that policy elsewhere. Can you point to anybody that didn't suffer the same fate? Your Honor, unless I'm using McDonnell-Douglas, I don't need to prove that. Well, actually, you sort of do, because you just got to the word pretext. I mean, pretext has become part of our vocabulary because of McDonnell-Douglas. But the point is, if the employer has an absolute right to terminate based on that ground, and she does not, in the end, dispute that she did what she's accused of doing, she says it's inadvertent, but, in fact, she doesn't dispute that she did not pay for the product that she took, then, as an at-will employee, the employer has the right to terminate based on that ground. You've got to do something to set aside that ground, don't you? Well, I feel the evidence is sufficient to allow us to go to a jury. With the circumstantial evidence, as I've stated it, and also I'd like to go back to the question by the Justice. We do not concede that she had done this previously. If you look at our exhibit, the unemployment decision, the defendant never even raised that until after the case got to the Civil Rights Commission. So we do not concede that she did it before. But the district court wasn't required to ignore that evidence just because you didn't concede it. That was still evidence that was in the record. I know, but I say that's an improper finding by the court. That's something the jury should determine, not the judge, because there were clearly genuine issues of material effect as to that issue. My client said she never did it before, and also, I might point out— There are not genuine issues of material effect as to whether or not the employer received that information, whether or not it was true may be a genuine issue, but there's no way you can say that the employer did not receive that information. Well, Judge, it's only based upon a self-serving declaration of Mr. Stockton, okay? They didn't provide any affidavits from anybody, nothing. But your client put in declarations that could be considered self-serving as well. That's what happens oftentimes in these types of cases. I know, but you can't decide the case based upon that self-serving statement in his declaration that he had received reports the week before that she was taking food. Without bringing in—you know, where's the evidence of that? Any discovery into that question? I mean, I don't know how the timing of this worked. Did you find out from him where the reports came from and have an opportunity to inquire from the supposed source of those reports? There's never been anything under oath with regard to that. Did you want to save some time? I think I will. May it please the Court, Jeff Harris for Whole Foods. There's one undisputed fact that eliminates the discrimination case. The company fired a non-pregnant male employee. Later. Okay, let me address— That could make a big difference, couldn't it? No, because you wouldn't— Was there any evidence that somebody terminated prior to this episode for this? No, but let me address that. So the company has a reason to want to bolster what it did and terminate somebody later, but that's a little different, isn't it? I don't think so. And let me ask you if you would think it was— We don't answer questions. Okay. Let me suggest that if the company fired another employee a month later and said, I'm firing you because you were asking for an accommodation for pregnancy, that evidence certainly wouldn't be excluded as irrelevant. Well, I didn't say it's irrelevant. I'm saying it may not be as completely compelling as you want it to be. Well, I think it is under SNEED. I think it is under SNEED v. Metro Casualty. The precedent that we cite at page 19 of our brief makes absolutely no distinction between whether or not the disparate treatment was before or after. The question is, was there disparate treatment? No, but did those cases involve the only incident of disparate treatment happened after the event in question? There is no indication in the SNEED case whether— So it didn't consider the question whether it's important to be before. It didn't raise the question whether it was before or after. If it's not raised, it wasn't considered. The big picture here, Whole Foods has across the country thousands of employees, presumably has hundreds of employees in Hawaii, and we have very limited evidence as to what happens in a circumstance that, it seems to me from the outside, couldn't be so entirely extraordinary. I mean, it may be the Whole Foods employees are really trained not to take anything without paying for it, but the episode is described to us. It's not implausible that the failure to pay for the $3 breakfast bar, whatever it was, was inadvertent. It is a harsh policy. Now, the employer is allowed to have a harsh policy, but if we don't have proof of it really applying a harsh policy consistently, and the only other illustration we have is something that happens a short time later when the store manager or team leader, whatever his title is, is motivated to confirm his first behavior as being proper, I'm not sure it's all that compelling in telling us that, yes, in fact, the store does have such a strict zero-tolerance policy and that this seemingly harsh treatment wasn't motivated by something else. Okay, well, that's... I mean, this is summary judgment. And the question is, could a jury, given all this evidence, including the termination of the male employee a couple months later, could the jury reasonably conclude that the real motivation wasn't the zero-tolerance policy, it was, in fact, that the store manager didn't want her to sit down on the job? Not under circuit precedent that requires direct evidence or specific and substantial circumstantial evidence. And let me get to that, not wanting to sit down on the job. That's at best ambiguous and not directly tied to the termination. He says it's undisputed, or it's disputed, but he says, I don't want you to sit down in the counter in the front of the store for half an hour. How do you get from there to, I want to fire you, without hopping four or five unreasonable inferences? The first thing that you could assume the fellow would do is send her home. Tell her to go sit in the back. Well, somebody's got to staff the bakery counter. Do we know that there are a surplus of employees such that there will be someone to staff the bakery counter? She, what we do have. And she's the bakery manager. She's the manager. She has some authority over that. She has a number of other employees to supervise. But do we know, does this record tell us that, because if, to be logical about this, if she really did have the ability to sit down and have no interruption to her job, then she organizes it that way and there's not a problem. And, indeed, the evidence shows that's what she did the next day. She went to work the next day and there was no problem with her working until she was called in because a female co-worker for the first time reported her for taking the food and eating it, which everybody agrees is a legitimate policy. It's legitimate for a company. Legitimate policy, the question becomes, is that really the reason for this termination? And the reason, the only reason that is given for pretext, for that being pretext, is not that there's any similarly situated people that are treated differently because all the court had before it below and all the court has now, has before now, is one other that was treated the same. There's just rank speculation that there's anybody else that engaged in that misconduct and was treated differently. That was a plaintiff's job. I'm assuming that the timing of this motion came after the usual period for discovery. So what we have in front of us is not limited because there wasn't enough time to inquire. It's just that's all the court has. Indeed. Okay. Indeed. And so the suggestion there might be similarly situated people out there Well, then spin every case that the court has ever decided saying there's no similarly situated people because you didn't look at other stores and other people and the employer didn't present a broad enough pattern and practice of behaving correctly. The evidence you have before you now is on all fours with Snead. But even if you want to look at the circumstances, even if the court wants to go ahead, even though it doesn't have to under Snead, because Snead says don't look at the circumstances. The suggestion that a fellow that expresses initial concern about having his bakery department manager not sitting down at the counter, connecting that up with termination, which is a markedly different decision than all the other things he could do in between, is neither direct evidence or circumstantial evidence. The one other point that I'd like to make is this, and Judge Tashima pointed it out, but I want to emphasize it. It doesn't matter whether plaintiff knew of the policy that Mr. Stockton relied on at paragraph 20 of his declaration, supplemental excerpt 26, which is on page 46. It matters what Mr. Stockton thought the policy was. This is a case about motive. You don't have to figure out whether she knew about the policy. It's whether Mr. Stockton knew that the policy applied. I think that's true, although then it makes curious the submission of the Northeastern policy. I understand a plaintiff came and started with the company there, signed that. Do we know anything about Mr. Stockton's background? Is he going to be looking to the written policies from the Northeastern region to decide what the policies are here? Mr. Stockton relies on the applicable policy here in his declaration. We cite the applicable policy at supplemental Exhibit R. That's the most important part of this case for the judges to look at, really, is is that I don't want you sitting down on the job. Is that enough direct evidence or circumstantial evidence that the judge is right, that whether or not which policy applies is is a red herring because we have the decision maker identifying the applicable policy that he relied on to make the termination decision. I really have nothing else unless the court has any questions. It appears not. Rebuttal. Your Honor, thank you. I would just like to follow up. Again, that was my same thought on the issue about the gentleman a month later taking a scoop of rice and being terminated. It was after she was terminated. Just like, again, after It may not be great evidence, but it is evidence. And right now we've got a void as to any employee who didn't suffer that fate. Your Honor, if I had the evidence, you'd have it.  There is none. But isn't that a problem? Well, but these cases are always a problem because you rarely find direct evidence and you rarely can meet Well, you presumably had time to take discovery. You could have inquired of the company of what employees were terminated through application of this policy. Well, they said there was none. And that becomes part of your evidence. I would like I'd also like to go back to again and to go take that a step further a month later. Yes. OK, they terminated a guy for a scoop of rice. Also, with regard to these other these employees saying she was stealing the rice before again, that was never even brought up at the unemployment. OK, that was not even mentioned to her. OK, so therefore, to me, that is totally fabricated. OK, and I would argue that to the jury. Also, I would look to to number 17 and Mr. Stockton's declaration. After finishing my investigation, I concluded that Isabella made no effort to pay nor had plans to pay. Is that the policy? So he's saying there that it could be a situation if you inadvertently do it and plan to pay for it. Then therefore, it's not a violation of the policy. So how did he determine that she had no plan to pay? She said she planned to pay for it. She said she paid for it. She just couldn't find her receipt. So getting back to, yeah, what is the policy? That's what he says. So again, we'd ask that you let us to go to a jury with this evidence and let a jury determine the facts here. Thank you. All right. Thank you, counsel. Thank you to both counsel. The case has argued is submitted for decision by the court. This court is in recess until 9 a.m. tomorrow morning. Thank you all. OK. All rise.
judges: Tashima, Rawlinson, Clifton